## HIRAM HALL, et al.,

### vs.

### AARON SMITH, et al.

The rights and obligations of the parties to a peculiar instrument, relating to the lease of a grist mill, considered and defined in reference to the terms of the instrument, the circumstances under which it was executed, and the conduct of the parties. It appearing that defendants were in default in not paying rent, as well as in not performing other special agreements found in such instrument, in relation to certain repairs and improvements : *Held*, That the district court was authorized to render judgment absolute for the plaintiffs, for the rent, and judgment conditional for the possession of the leased

Hall v. Smith.

premises, and for the forfeiture of the defendants' rights under the contract, in case the defendants should fail to pay the rent due at the time the action was commenced, with interest thereon and the costs of the action, or should fail to perform their obligations under such special agreements, within a reasonable and specified time after notice of the judgment herein rendered.

This action was brought in the district court for Meeker county to recover rent of a grist mill let by plaintiffs to defendants; to recover damages for non-performance by the defendants of certain articles contained in the agreement of lease; and to recover possession of the leased premises, as upon a forfeiture of the lease by reason of such non-performance of their agreement by the defendants.

The action was referred to Geo. L. Otis, Esq., as sole referee, who reported a judgment for the plaintiffs. A new trial was refused by the district court, and the defendants appeal from the judgment entered upon the referee's report, as well as from each intermediate order in the action

The written agreement between the parties, the relief granted by the district court, and such other matters as are necessary to a full understanding of the case, are sufficiently stated in the opinion.

W. P. WARNER and A. C. SMITH for Appellants.

CORNELL & BRADLEY for Respondents.

*By the Court*—BERRY, J.—It is not strange that a controversy should have sprung up as to the meaning and proper construction of an instrument so carelessly, loosely and obscurely drawn, as that upon which this action is founded. We will endeavor to construe it as well as we can with reference to its language, and in view of the circumstances attending its execution, and of the conduct of

the parties, so far as the same appear from the finding of the referee. So much of the agreement as is necessary to be considered, is in these words, viz: "the said party of the second part, (the defendants,) agree to pay the said parties of the first part, (the plaintiffs,) twenty-four hundred dollars, for the use of their grist mill one year, and to pay the taxes on said mill. The parties of the second part further agree, to pay the parties of the first part two hundred dollars monthly, in advance. The parties of the second part agree to keep the mill in good repair, and to make all necessary repairs where it does not exceed twenty-five dollars. The rent of the mill is to continue unless the amount of repairs exceed twenty-five dollars; over that amount the rent of the mill to be stopped until repairs are made, the parties of the first part to furnish all material for the same. It is further agreed, that there is to be a new wheel and flume for said wheel, the parties of the second part to do all work they are capable of and to furnish one man, the parties of the first part are to furnish a carpenter and material for same. The parties of the second part agree to make and put in a $2\frac{1}{2}$ foot corn stone, in a workmanlike manner. The parties of the first part to furnish all iron work and gearing, and all material except stone for same. The parties of the second part are to put in a new bolting, the parties of the first part to furnish material for the same."

The defendants entered into possession of the mill on the 16th day of March, 1869, (the date of the agreement,) on which day, as well as on the 16th day of April following, they paid the stipulated monthly rent of two hundred dollars. Ever since said 16th day of March, (until put out under the judgment below,) the defendants have retained possession of the mill, using and occupying the same. The mill contained two bolts, known as the "custom bolt" and

the "merchant bolt," both of which were in bad repair at
the time when defendants took possession; the "custom
bolt," being that for which the new bolting was to be pro-
cured, and the parties having construed the contract to mean
that the defendants were to repair the merchant bolt with
materials to be provided by plaintiffs.  The agreement, it
will be observed, designates no time within which the new
wheel and flume, the corn stone or the new bolting, are to
be put in, or in which any repairs are to be made or any
materials provided.   From these facts, and the general tenor
of the agreement, we think it is fairly to be inferred that
both parties regarded and treated the mill  as tenantable on
the 16th day of March, 1869.   Notwithstanding it was out
of repair, the defendants were let into possession and use of
it at the date of the agreement; they paid the first month's
rent in advance as stipulated, continued to occupy and use
the mill during the first month of the term, paid the second
month's rent in advance, and continued to retain possession
until put out under the judgment entered below.   This
course of conduct may properly be regarded as a practical
construction by the parties themselves of their somewhat
obscure contract, and will aid us in arriving at what they
understood and intended the contract to mean.   We may
fairly infer, that, in the understanding and meaning of the
parties, the mill was in such condition and the agreement
of such nature, that the term commenced and the rent began
to run from the day when the agreement was executed.  ·
What then were the rights and obligations of the parties so
far as involved in this case?   The defendants were to pay
two hundred dollars rent per month, in advance, the first
installment falling due on the 16th day of March—the date
of the agreement.   They were to *keep* the mill in good re-
pair, which would seem to signify that they were to keep it

in as good repair as it was in when they took it.   If other repairs were necessary beyond what was required to keep the mill as good as they received it, the defendants were to make the same at their own expense, (except for materials), provided their cost did not exceed twenty-five dollars.   If such other repairs exceeded in cost twenty-five dollars, the defendants were not bound to make them, nor were the plaintiffs; but if the plaintiffs did not make them, the rent stopped until they were made; so that as to such repairs, (exceeding twenty-five dollars), the agreement to pay the rent is expressly made a dependent agreement.

As to the effect of this provision in regard to the stopping of rent, we agree with the referee and plaintiffs' counsel. It did not operate to change the times fixed for the monthly payments, but to lessen the amounts due at such fixed times. In addition to and outside of these general provisions in reference to repairs, the contract contains special agreements for certain special repairs and improvements, to wit: in regard to the new wheel and flume, the corn stone, and the new bolting.   As to their subject matter, these special agreements control the rights and obligations of the parties, and whether the things to be done under them are in the nature of improvements or repairs, the rent is not stopped, (under the provision as to repairs exceeding in cost twenty-five dollars,) by the plaintiffs' failure to perform their part of the contract concerning them, but the agreement to make such special repairs and improvements, and the agreement to pay rent, are independent of each other.   In case of such failure on the part of the plaintiffs, the defendants may recover damages for the breach of such special agreement by the plaintiffs in an action brought for that purpose; or, in an action brought by the plaintiffs for the rent, the defendants may set up, not that they are not bound to pay the

rent, but that they have a counter-claim for such damages, which should be set off against the plaintiffs' claim for the rent. Further than this it is not necessary to inquire particularly what the rights and obligations of the parties were under the agreements in reference to these special repairs and improvements, since the referee has found, as matter of fact, that the plaintiffs were in no default in performing the obligations thereby imposed upon them.

It is said by the defendants that the findings are not supported by the evidence. There was no proper *case* prepared below in this instance, but the attorneys for the respective parties stipulated that the "minutes of the referee, * * the same to be certified to by him * *, shall be regarded as the evidence acted upon by such referee in determining this action." The referee at the foot of his minutes certifies that "the foregoing are my minutes of the evidence acted upon by me in determining the above action; exhibits are referred to in the minutes. The testimony is stated as I apprehended it at the trial." A motion was made for a new trial below, one of the grounds of which was that the referee had mistaken the evidence, and that his minutes were not correct, and in support of this ground, affidavits were presented.

We do not perceive how any weight can properly be given to the affidavits in view of the language of the above stipulation. The regular way to present the testimony for review was by embodying it in a settled case, and if a party sees fit to substitute the referee's minutes for a case, it is not for him to attempt to show by affidavits that they do not contain a true report of the testimony. Besides there was a counter affidavit presented by the plaintiff. As to the claim that the findings of fact are not supported by the testimony, it suffices to say that the testimony, as it appears in the minutes, was somewhat confused and contradictory, and,

without any fault upon the part of the referee, but for want of a properly settled case, comes up here in a very unsatisfactory condition; but a careful perusal of it, as it is, has led us to the conclusion that there is testimony having a reasonable tendency to sustain the findings of the referee.

We are inclined to agree with the defendants' counsel that no time having been designated within which the plaintiffs were to perform the obligations imposed upon them by the agreements for special repairs and improvements, it was their duty to perform the same in a reasonable time, that is, without any unnecessary delay; but however this may be, the referee has found that there was a delay of some three or four months, but that it was with the agreement and assent of the defendants. If, in this way, the defendants saw fit to waive their strict legal rights, they cannot complain, nor are they entitled to damages for such delay.

The defendants insist that the plaintiffs have not yet furnished an iron band for the corn stone. The referee finds, that they have furnished all that they were required to do for the corn stone. Whether it was necessary for the plaintiffs not only to provide the material for the band, but to have it made and put on, depended upon whether the band was "iron work" as specified in the contract, and that was a question of fact, upon which we take the finding of the referee to be conclusive, and not a question of law, which this court can determine as a matter of judicial knowledge. We think also that the referee was right in finding that the plaintiffs were not in default in not providing materials with which to repair the merchant bolt. ˙ Since, by the agreement and by the understanding of the parties, the new bolting for the "custom bolt," as well as the material for the repair of the "merchant bolt," were to be put on by the defendants— the plaintiffs furnishing the material for both bolts—all par-

Hall v. Smith.

ties had a common interest in the repair and improvement of the bolts. It was therefore quite proper, indeed necessary, that they should confer as to the quantity and character of materials required, and agree upon the same, as they are found to have done. And if, as it turned out as the result of their calculations or measurements, a common mistake was innocently made as to the quantity required, and the plaintiffs provided all that was supposed to be necessary, they could not be said to be in default for not furnishing all that was actually necessary, until the deficiency was discovered and the plaintiffs were notified. As it does not appear that the deficiency was found out, and that the plaintiffs were made aware of it until after the defendants made default in the payment of the rent, for the recovery of which this action was brought, we think the referee was right in holding that the plaintiffs' failure to furnish the material for repair of the merchant bolt was no ground of defence or counter claim in favor of the defendants.

We believe that we have now disposed of all the important points in the case except that made in regard to the character of the relief granted, which was as follows: "That the defendants on paying said rent, (that is the rent due and unpaid at the time of the commencement of the action) and the costs of this action to be taxed, and putting in said corn stone, and repairing said merchant bolt with materials to be provided by the plaintiffs, are entitled to the possession of said mill and to the benefit of said contract in writing; but in their default in paying said $739 79-100, and the costs of this suit to be taxed, within ten days after notice of the judgment to be entered on this report, such notice to be given in writing to the defendants personally, or to their attorney, or on their default in putting in said corn stone and repairing said merchant bolt, the plaintiffs furnishing material therefor,

within thirty days after notice of the judgment so to be entered, then the said contract shall become forfeited and the possession of said premises be given forthwith to the plaintiffs, and the plaintiffs shall recover of said defendants the said sum of $739 79-100 and the costs of this action to be taxed, and have execution therefor, and the defendants be enjoined from continuing in possession of or using or in any way interfering with said premises. The plaintiffs shall furnish the material for repairing said merchant bolt within ten days after said rents shall be paid as herein provided."

The objection made to this relief by the defendants, is that, as the contract contained no provision for re-entry, and as defendants' insolvency, even if it were a ground for relief, was not found, possession was improperly awarded to the plaintiffs, and reference is made to *Sections* 15 and 26, *Ch.* 75, *Gen. Stat.* It will be observed, however, that *Sec.* 15 has reference to a case where the right of re-entry is given for a failure to pay rent, while in the case at bar, there was a failure to perform other specific agreements, as well as to pay the rent, so that the section does not assume to govern in a case like that under consideration. Section 26 has reference only to waste. The plaintiffs in this action sought both legal and equitable relief. They asked for the rent due and unpaid, for damages for the non-performance by defendants of their agreements as to repairs and improvements, and for the forfeiture of the contract and an award of possession. The referee adjudged to the plaintiffs the rent absolutely, and possession, and the forfeiture of the contract, upon conditions, which, as it appears to us, were not hard or unfair for the defendants. Unless we are altogether wrong in what we have before said, there was no reason why the defendants should not pay the rent. As to the forfeiture and the award of possession, the defend-

ants were allowed the reasonable option of performing their contract or abandoning and losing their rights under the same. Of this we are of opinion that they have no just ground of complaint. The court in which the action was pending, and as auxiliary to which the referee was acting, was a court of general law and equity jurisdiction, and we are of opinion that the relief granted was within its authority.

A simple money judgment for the rent, would have fallen far short of an adequate and complete remedy for the plaintiffs. It would not only have left the defendants in possession, notwithstanding the judgment was unsatisfied, but it would have left them in possession while they were neglecting to fulfil other provisions of the agreement, in which the plaintiffs, as owners of the mill and concerned in its reputation, had a substantial and valuable interest. To protect this interest and to obtain compensation for defendants' neglect, the plaintiffs would be compelled to resort to further litigation, pending which the defendants' neglect might be continued, greatly to plaintiffs' detriment.

The case was a perplexing one, the facts complicated, the legal rights and obligations of the parties not very clearly defined, and upon the whole we are of opinion that the referee has adjusted the matter in controversy, with good sense and in a spirit of justice and equity to all concerned.

Judgment affirmed.